**NOT FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 05-CV-235-HRW

BASIM ALI TALOUZI                                                       PETITIONER

VS:                         **MEMORANDUM OPINION AND ORDER**

TERRY O'BRIEN, Warden                                          RESPONDENT

*** *** *** ***

This matter is before the Court for a decision on the instant *pro se* petition for writ of habeas corpus, brought pursuant to 28 U.S.C. §2241.

BACKGROUND

On December 7, 2005, Basim Ali Talouzi, an individual presently confined at the Federal Correctional Institution in Ashland, Kentucky ("FCI-Ashland"), filed the instant habeas proceeding and paid the $5.00 filing fee. He has claimed that the Bureau of Prisons ("BOP") denied him due process when it classified him as a "sex offender," even though he has never been convicted of a sex offense.

Upon screening the petition, the Court summarized the factual allegations as follows:

> Petitioner Talouzi is serving a sentence handed down in the United States District Court for the Southern District of West Virginia, after his 1998 indictment on and guilty plea to possession and distribution of crack cocaine. He states that on February 13, 2003, he received notice that the BOP was classifying him as a sex offender, even though he has never committed nor been convicted of a sex crime. This classification is purportedly not only erroneous and arbitrary, it was determined without notice to him or an opportunity to be heard.
>
> The petitioner gives his version of events which led to the BOP's wrong decision. He alleges that prior to his incarceration, on September 1, 1997, he spanked the five-year-old daughter of a female acquaintance, an act which led to the

woman and her boyfriend threatening him with filing a sex abuse complaint if he did not meet their demands for money and drugs. He states that he refused this extortion attempt. That night, police questioned the petitioner but did not arrest or charge him.

Time passed. After his federal indictment on the drug charges, in May of 1998, in Raleigh County, West Virginia, Talouzi was indicted on two counts of First Degree Sexual Abuse, purportedly based on the September, 1997 incident. He states, however, that to date, "[n]othing, including a medical examination of the child, supports claims that Talouzi sexually abused the child."

After his guilty plea to the drug charges, the petitioner began serving his federal sentence. While in prison, in 2000, he was offered a deal to dispose of the state charges: if he would plead guilty to two misdemeanor counts of battery, the term of incarceration imposed therefor would run concurrently with his federal sentence and no monetary penalty would be imposed. The petitioner accepted the deal. Although the plea agreement was not reduced to writing, he pled guilty to the battery counts and he was appropriately sentenced in the state court on September 1, 2000.

Record No. 3 at 1-2. In 2003, the petitioner also learned that because of that classification, he would not be eligible for placement in a Community Corrections Center ("CCC") or halfway house. Additionally, he would not be eligible for a sentence reduction, pursuant to 18 U.S.C. §3621(e)(2)(B), which provides for a sentence reduction of up to a full year, for completion of a prison drug program.

Insisting that he did not sexually abuse the child and that the offer of a plea agreement for the battery charges was attributable to the state's knowing that it could not prove a sex abuse case against him, Talouzi appealed the designation through the BOP administrative remedy system. Having exhausted that avenue of relief, he came to this Court asking to have the sex offender designation removed. With regard to the law, he has cited *Kirby v. Siegelman*, 195 F.3d 1285 (11th Cir. 1999), for the proposition that "[a] prisoner who has never been convicted of a sex offense is entitled to procedural due process before being classified as a sex offender by prison or custodial officials."

2

The Court issued an Order requiring the government to respond and noting therein that the Sixth Circuit has thus far reviewed, and approved, BOP sex offender classifications only in cases where the prisoner was convicted of the sex crime, the Court citing *Montalvo v. Snyder*, 84 Fed.Appx. 521 (6th Cir. 2003) (unpublished), and in *Fortino v. Hemingway*, 21 Fed.Appx. 245 (6th Cir. 2001) (unpublished).

<u>THE RESPONSE</u>

The respondent explains that the Public Safety Factor (PSF) is a part of the classification of prisoners for placement in an appropriate level of security, and he stresses that Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner," the respondent citing, *inter alia*, 18 U.S.C. §3621,[1] *Moody v. Daggett*, 429 U.S. 78, 88 (1976), and *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986).

Attached to the response are copies of the documents upon which BOP personnel relied in making the instant petitioner's PSF decision. The respondent also provides copies of the documents exchanged during the BOP administrative appeals and admits that the petitioner exhausted the administrative process prior to the filing herein. In Remedy No. 291750, he had sought removal of the sex offender factor so that he would be eligible for placement in a CCC, and in Remedy No. 380862, he asked for a waiver of the PSF designation in order to participate in the federal Residential Drug Abuse Program ("RDAP"). Under the RDAP, a BOP prisoner must first satisfy a classroom component and then have a successful CCC placement in order to be eligible for earlier release pursuant to 18 U.S.C. §3621(e).

---

[1] The respondent footnotes that this authority extends to the previous authority under old law 18 U.S.C. §4082.

Pointing to the attached copy of the BOP policy with regard to public safety factors, in Policy Statement ("P.S.") 5100.07 Security Designation and Custody Classification Manual,[2] the respondent insists that Talouzi was properly classified thereunder. "BOP staff determined that the PSF for Sex Offender was appropriately applied since the criminal charge and subsequent conviction as well as the behaviors involved in the matter were aggressive and abusive in nature, and directed at a five-year-old female child." Attached declaration at 3, ¶ 7.

As a result of the sex offender designation, under another policy, P.S. 7310.04 Community Corrections Center (CCC) Utilization and Transfer Procedure, Talouzi cannot be placed in a CCC; and as a result of not being eligible for the CCC placement, he cannot be eligible for RDAP and possible early release under 18 U.S.C. §3621.

The respondent stresses that the BOP's decision about Talouzi was not arbitrary, and he further contends that because the petitioner was able to challenge the decision, *via* the administrative remedy system, he has obtained all of the process due him. Finally, the respondent urges that this Court follow *Fortino* and *Montalvo* in holding that the petitioner's sex offender PSF is both reasonable and permissible; and that the Court reject the petitioner's Eleventh Circuit *Kirby* case, which "dealt with the State of Alabama's sex offender community."

---

[2] Chapter 7 of the program statement contains the PSF policies. Chapter 7 is entitled Public Safety Factors and Management Variables, and the first sentence explains that "[t]here are certain factors which require increased security measures to ensure the protection of society." The sex offender designation is lettered F. Other SPF's are B-Disruptive Group; C-Greatest Severity Offense; G-Threat to Government Officials; H-Deportable Aliens; I-Sentence Length; K-Violent Behavior; L-Serious Escape; and M-Prison Disturbance.

4

DISCUSSION

The Court begins with the policy under which a prisoner is classified with a sex offender PSF

and notes that it begins with an examination of the prisoner's Pre-Sentence Report (PSI):

> SEX OFFENDER.  A male or female inmate whose behavior in the current term of confinement or prior history includes one or more of the following elements shall be housed in at least a Low security level institution, unless the PSF has been waived. *A conviction is not required for application of this PSF if the PSI, or other official documentation, clearly indicates the following behavior occurred* in the current term of confinement or prior criminal history.  If the case was dismissed or nolle prosequi, application of this PSF cannot be entered.  However, in the case where an inmate was charged with an offense that included one of the following elements, but as a result of a plea bargain was not convicted, application of this PSF should be entered.
>
> *Example: According to the PSI, the inmate was specifically described as being involved in a Sexual Assault but pled guilty to Simple Assault.  Based on the documented behavior, application of this PSF should be entered.*
>
> (1)      Engaging in sexual contact with another person without obtaining permission to do so (forcible rape, sexual assault or sexual battery);
>
> (2)      Possession, distribution or mailing of child pornography or related paraphernalia;
>
> (3)      Any sexual contact with a minor or other person physically or mentally incapable of granting consent (indecent liberties with a minor, statutory rape, sexual abuse of the mentally ill, rape by administering a drug or substance);
>
> (4)      *Any sexual act or contact not identified above that is aggressive or abusive in nature* (rape by instrument, encouraging use of a minor for prostitution purposes, incest).  Examples may be documented by state or Bureau of Prisons' incident reports, clear NCIC entries, or other official documentation;
> . . .

P.S. 5100.07 Security Designation and Custody Classification Manual (emphasis added).

Next, the Court looks to the process whereby the sex offender PSF was imposed on Talouzi.

The Court first notes that in the example given in center of the policy, as emphasized above, the sex

offender PSF is to be applied to a prisoner whose sexual assault charge was reduced to simple

assault and who then pled guilty only to the  lesser charge.  Talouzi's fact pattern has a sexual

5

battery charge being reduced to simple battery, and his guilty plea to the lesser charge.  These are close parallel scenarios which justify the application of the sex offender PSF to Talouzi.

As is required under the program statement, the BOP appears to have begun with Talouzi's PSI, page 16 thereof concerning the petitioner's prior criminal record.  It shows past convictions for speeding and DWI, pursuant to a plea agreement, and refers to the following as a then-pending charge:  "First Degree Sexual Abuse (two counts), Raleigh County Circuit Court, Beckley, WV."  The only description of the offense in the PSI was, "The indictment charges that Talouzi subjected [name redacted], a five-year-old female, to sexual contact on September 1, 1997.  No trial date has been set."  Record No. 12, Exhibit B.

According to the attached declaration of a BOP attorney and his attachments to the Response, the instant petitioner's Central Inmate File includes additional, more recent documentation, specifically, the plea agreement with regard to reducing the charges and the state court's Order of September 1, 2000, containing the judgment and bearing the petitioner's signature.  "The Court accepts the defendants's PLEA of GUILTY to TWO COUNTS of BATTERY," and sentences him to one year in jail on each count, to run consecutively with each other and "CONCURRENTLY" to the federal sentence Talouzi is currently serving.  Record No. 12, Exhibit C.

The BOP's administrative responses reveal that the PSF designation process continued still farther:

> . . .  You were convicted of a lesser charge of Battery.  However, the Unit Team looked at the overall offense behavior when reviewing this case.  The Raleigh County Prosecutor's Office was contacted and records reveal the State Police Forensic Lab results of the Sex Crime Kits confirm that the child was molested.  Therefore, in accordance with policy you have been categorized with a Public Safety Factor of "Sex Offender" and Sex Offenders are not ordinarily placed in a CCC.  It is evident that your Unit Team and Psychology Services staff have made a sound correctional judgement in your case.

Record No. 1, Exhibit C. Later, the BOP ruled, "Due to your inability to complete the community-based transitional services following successful completion of a residential drug abuse program [CCC], Ashland staff was correct in determining you to be ineligible for early release" under 18 U.S.C. §3621(e). *Id.* at Exhibit D.

Thus, the BOP followed the program statement and then went beyond its own central files before making its decision to give the petitioner the sex offender PSF, *i.e.*, contacted the prosecutor's office and looked at records in the state's hands, records which indicated that the five-year-old girl had been sexually molested. However, the Court examines the decision further, considering the petitioner's due process claim and asking if there is not a constitutional limit to the BOP's ability to assign a sex offender PSF to a person not convicted of a sex offense.

Few federal courts have ruled on the issue before the Court today. The Sixth Circuit found that the sex offender PSF which barred one petitioner's early release under §3621 "is both reasonable and permissible." *Fortino*, 21 Fed. Appx. at **2. That court also found the same PSF "appropriate" in classifying another petitioner and thereby triggering the sex offender notification and registration provisions under 18 U.S.C. §4042(c). *Montalvo*, 84 Fed.Appx. at **1. As aforestated, however, the petitioners therein had been convicted of sex offenses, whereas the instant petitioner was not convicted of a sexual offense. Petitioner Talouzi pled guilty only to battery charges, yet had the sex offender PSF applied nonetheless.

The petitioner's case, *Kirby*, also offers little assistance to the Court. As the respondent points out, the *Kirby* court is from another circuit and the case is not about BOP classifications. It found that a petitioner with a sex offender classification under state law had "a liberty interest in not being *branded* a sex offender." *Kirby*, 195 F.3d at 1291 (emphasis added). Therefore, a sex

offender classification after the grand jury chose not to indict the petitioner on a rape charge in 1984, and a later *nolle prosequi* of a sexual abuse charge in 1992, warranted the court's consideration into whether the state provided the petitioner due process in imposing that classification on him. *Id.*, 195 F.3d at 1292. Therefore, the appellate court remanded the case to the district court.

The appellate court in this circuit, the Sixth Circuit, has not recognized a liberty interest in a prisoner's having sex offender label or stigma. To the contrary, *see Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999). Thus, the instant case is easily distinguishable from *Kirby*. This Court has, therefore, searched beyond the case law cited by the parties to find guidance in sex offender designations which have been challenged in other courts.

Research on the *Kirby* case has led to another state case which ended quite differently. On August 25, 2005, another district court, also in a circuit which recognized no such "stigma" giving rise to protected liberty interest, rejected a state prisoner's claim that he was denied parole partially based on his classification as a sex offender, despite his never having been convicted of a sex offense, *Grennier v. Frank*, 2005 WL 2076432 (W.D.Wis. 2005) (slip opinion). The district court did not examine the original charge(s) or conviction(s), but went straight to whether the petitioner had a due process claim, initially theorizing that there were due process implications merely from being labeled a "sex offender," as in *Kirby* and a Ninth Circuit case, *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997).

The *Grennier* court came to a different conclusion than did the Ninth and Eleventh Circuits, however. The District Court for the District of Wisconsin studied the possible origins of a protected liberty interest and found none in (1) the stigma, (2) being forced to participate in a sex offender treatment program, or (3) being ineligible for parole without completion of a treatment program.

Accordingly, the court wrote, "After further consideration, I have concluded that the law in the Seventh Circuit would not recognize a protected liberty interest in plaintiff's circumstances." *Id*. at *1. "Therefore, I disagree respectfully with the conclusion reached by the court in *Kirby*." *Id*. at *4.

There are few cases which have specifically dealt with the sex offender PSF in the BOP classification system. In *Green v. Federal Bureau of Prisons*, 2002 WL 32619483 (D. Minn. 2002) (unpublished), the original charge against the prisoner was for receiving profit from prostitution of an individual "at least 16 but less than 18." This was reduced to the crime of receiving profit from prostitution and the petitioner pled guilty. The district court ruled that "Green's PSF is actually based on information connected with the crime to which he pled guilty. . . . Therefore, the BOP was not acting arbitrarily or capriciously when it determined that Green's criminal history . . . warrant[ed] application of the PSF." *Id*. at *4. This result, too, is not surprising or particularly helpful, because both the original and the amended charges in *Green* kept the sexual element, prostitution, which justifies the PSD.

A different result was reached in the same United States District Court for the District of Minnesota, when a Magistrate Judge wrote, and the district court adopted, an opinion granting habeas relief. In *Jones v. Stiff*, 2000 WL 34494817 (D.Minn. 2000) (unpublished), *adopted*, 2000 WL 34494816 (D.Minn. 2000), the petitioner had pulled a woman into his dormitory room, forced her to have sex, and when several male students knocked on the door, brandished a handgun. Based on statements made to police at the time of the incident, Jones was indicted on five charges, including criminal sexual assault, theft, aggravated assault, unlawful possession of a firearm without an identity card, and unlawful use of a weapon.

After the woman refused to testify against him, Petitioner Jones's indictment was dismissed and he was re-charged with non-sex offenses, *i.e.*, aggravated assault, unlawful use of a weapon, and unlawful restraint. He eventually entered into a plea agreement and pled guilty to only two of the three offenses, unlawful use of a weapon and unlawful restraint. The court granted the petition on the rationale that the original alleged sexual assault was dismissed; the later aggravated assault charge could have been predicated on the petitioner's waving the handgun, rather than the original sex charge; and the record was "unclear" whether the sexual assault was part of the underlying factual basis of the three crimes re-charged against Jones. Therefore, the BOP's classification of him as a PSF sex offender was ruled "inappropriate." *Id.* at *2.

A similar result in favor of the petitioner was reached in *Stafford v. Pratt*, 2001 WL 548898 (N.D. Tex. 2001) (unpublished), wherein the petitioner was originally charged with rape and later pled guilty to the amended charge of contributing to the delinquency of a minor. The BOP's designation of the sex offender PSF on the petitioner therein was based only on a PSI entry which described the charge as based on the petitioner and another man taking two juvenile girls to a residence, "where they were raped." The district court found no evidence of a plea bargain and characterized the BOP's conclusion that there was a plea bargain as mere "speculation," speculation which was "unsubstantiated" and "the essence of an arbitrary and capricious determination." Therefore, habeas relief was granted.

This case, however, differs from the foregoing decisions in favor of the prisoners in the District of Minnesota. Unlike the instant petitioner, Jones had the sexual assault charge in an indictment which was dismissed, a situation in which BOP's P.S. 5100.07 provides that the sex offender PSF not be imposed; there were multiple charges whose factual predicate could have

10

formed the basis of the ultimate assault charge to which the prisoner pled guilty; and the federal court had before it an insufficient record to support the imposition of the sex offender PSF. This case is also distinguishable from *Stafford* in the same respects. The record before this Court contains the plea agreement; the court order in which the petitioner pled guilty to two counts of battery on a five-year-old; and a factual basis to support Talouzi's sex offender PSF, *i.e.*, the BOP found documentation showing that the girl was molested. Therefore, the persuasive value of the *Stafford* and *Jones* opinions is diminished.

Finally, there is the decision in *Day v. Nash*, 2005 WL 2654089 (D.N.J. 2005) (slip opinion), wherein the sex offender PSF was applied to Petitioner Day based on a PSI which indicated that he was originally charged with Lewd and Lascivious Act in Presence of a Child under 16, and he had later pled guilty to the amended charge of Exposure of Sexual Organs, a lesser included offense. Petitioner Day insisted that his conduct was not a sex offense, that he was urinating on a bush while intoxicated, and that the conviction on the lesser charge should have been expunged because he successfully completed the probation imposed therefor.

The district court in *Day* examined 18 U.S.C. §3621(b) and P.S. 5100.07 and wrote simply, "Petitioner's claim that his classification deprives him of liberty without due process, in violation of the Fifth Amendment, is without merit," the court citing well known Supreme Court law, *inter alia*, *Moody v. Daggett*, 429 U.S. at 88, and *Sandin v. Conner*, 515 U.S. 472 (1996). The Court finds *Day* and *Grennier* persuasive for disposition of the instant case.

This Court finds that there is no due process violation herein because there is no liberty interest with regard to the sex offender PSF. This is consistent with Supreme Court law regarding other aspects of prisoner classifications, as cited in *Day* and *Grennier* and elsewhere. It is well

11

settled that claims based upon the classification procedures do not state constitutional claims. *Moody v. Daggett*, 429 U.S. at 88; *Olim v. Wakinekona*, 461 U.S. 238, 249 (1963). There is no inherent constitutional right to placement in a particular security classification. *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). Congress has given federal prison officials full discretion to control the conditions of confinement, and prisoners have no constitutional entitlement to invoke due process claims. *Moody v. Daggett*, 429 U.S. at 88 n.9; see also *Sandin v. Conner*, 515 U.S. at 486.

With regard to the petitioner's having lost any opportunity for early release, there is no authority for a prisoner's having a liberty interest in 18 U.S.C. §3621(e)(2), which by its very terms grants the BOP full discretion to grant or withhold an early release, even denying any early release to those who have already completed the RDAP. Early release is much like parole, in that either possibility "provides no more than a mere hope that the benefit will be obtained." *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *see Green*, 2002 WL 32619483 at *3 (possibility of early release, is not a liberty interest under *Sandin v. Conner*, 515 U.S. at 487).

The result herein is also consistent with the Sixth Circuit's *Montalvo* decision, wherein the appellate court affirmed this Court's denial of relief for the prisoner therein who had a sex offender PSF, on the ground that it was not based on a constitutionally protected liberty interest. *Montalvo*, 84 Fed.Appx. at 525. Moreover, under the circumstances of this case, to find a liberty interest in community custody placement would be to involve the judiciary in "the day-to-day functioning of . . . prisons . . . [and] . . . issues and discretionary decisions that are not the business of federal judges." *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976).

Even were there to be a liberty interest triggering due process protections, the Court finds no fault with the process that Petitioner Talouzi was afforded. The sex offender PSF was imposed consistent with policy. Additionally, he was told of the reasons for the decision, shown documentation supporting the sex offender PSG, and afforded opportunities to present evidence to challenge that conclusion, including the BOP appeal process found at 28 C.F.R. §§542.10-.19 (1998) and court review. The Court must agree with the respondent that Talouzi has received all of the process which would have been due him. *See Sandin v. Conner*, 515 U.S. at 483.

To the extent that the petitioner herein claims that the sex offender designation on a non-sex offender was arbitrary, his claim also fails. The Supreme Court has written that "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986). *See also Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 223-26 (1985)).

However, this Court cannot find that the PSF decision herein was arbitrary in the face of documentation that neither of the two charges was dismissed; the petitioner was required to and did admit to two instances of battery on a five-year-old; the penalty to which the prosecutor agreed was substantial for simple battery, *i.e.,* consecutive one-year sentences; and an expert had determined that the child had been sexually molested.

As in *Green*, the instant petitioner's PSF was based on information connected with the crimes to which he pled guilty. His case directly fits the directions and the example in the program statement. Moreover, according to the declaration of the BOP attorney, there was a second policy basis for the decision, *i.e.*, a battery charge regarding a 5-year-old girl was deemed to be a "sexual

13

act or contact . . . that is aggressive or abusive in nature," which also justifies the sex offender designation.  P.S. 5100.07, ¶ (4).  This does not amount to arbitrariness or capriciousness which shocks the conscience of this Court.

Finally, the Court notes that in addition to the preceding specific rulings, the Supreme Court has established a minimum intrusion policy into the decisions of prison administration which provided officials wide discretion in the operation of prison facilities.  *See Procunier v. Martinez*, 416 U.S. 396 (1974).  The Court has regularly cautioned the district courts to stay out of the business of micro-managing prisons.  *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987).  This Court will not interfere with the PSF portion of this petitioner's classification by prison officials.

CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** that the petition of Basim Ali Talouzi for writ of habeas corpus is **DENIED**; this action will be **DISMISSED** from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

This March 10, 2006.



Signed By:

*Henry R Wilhoit Jr.*

**United States District Judge**

14